NOT FOR PUBLICATION                                        (Document No. 5)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| GEORGE A. STRASSLE and TIMOTHY S. CARROLL,<br><br>            Plaintiffs,<br><br>v.<br><br>BIMBO FOODS BAKERIES DISTRIBUTION, INC.,<br><br>            Defendant. | Civil No. 12-3313 (RBK/AMD)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

This matter arises out of Plaintiffs George A. Strassle and Timothy S. Carroll's (collectively, "Plaintiffs") claims against Bimbo Foods Bakeries Distribution, Inc. ("Defendant") for breach of contract and violations of the New Jersey Franchise Practices Act ("NJFPA"). Currently before the Court is Defendant's motion to dismiss Plaintiffs' NJFPA claim as well as their request for certain damages (Doc. No. 5). For the reasons stated herein, the Court finds that Plaintiffs have alleged facts sufficient to give rise to a plausible claim for relief under the NJFPA. However, they are barred under their contract with Defendant from recovering so-called "lost profit" damages, to the extent that those damages relate to potential profits on sales they planned to make to third-party retail customers. Thus, Defendant's motion will be granted in part and denied in part.

1

I.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

Because Defendant is not moving at this time to dismiss Plaintiffs' breach of contract claim, it is not necessary to recount in detail many of the allegations found in Plaintiffs' ninety-three-paragraph Complaint. Instead, it will suffice to note the following. Plaintiffs are distributors of bakery products. They each signed a contract ("Distribution Agreement") with a bakery goods distribution company not involved in the instant litigation. The Distribution Agreement granted them the exclusive right to buy "any and all types of Arnold's, Freihofer's and Thomas' fresh baked bread and roll products and the exclusive right to re-sell those products to New Jersey stores" within a specified territory. Compl. ¶ 32. Around January 2010, Defendant, having acquired the distribution company, assumed all legal duties and obligations to Plaintiffs under the contract. *Id.* at ¶ 39.

Under the parties' Distribution Agreement, Defendant agreed to sell and deliver to Plaintiffs "sufficient quantities of [bread] Products to adequately and properly supply the Outlets in [each Plaintiff's] Sales Area." Dist. Agreement § 3.2.[2] In return, Plaintiffs agreed to "develop and maximize sales" of Defendant's bread products by "maintaining an adequate and fresh supply" of those goods at various retail locations within their designated sales areas. *Id.* at § 4.1.

The Distribution Agreement further provided that the retail stores could elect, under certain conditions, to "accept delivery of the Products by any method other than store door delivery," and that in such cases, Plaintiffs would "have the first right to effect such alternative

---

[1] When considering the sufficiency of the factual allegations in a plaintiff's complaint, the Court, for purposes of deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), assumes such allegations to be true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).
[2] Plaintiffs attached a copy of the Distribution Agreement to their Complaint. Thus, the Court may properly consider that document in evaluating Defendant's motion. *See Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

service." *Id.* § 7.2. Finally, both parties agreed not to be liable to each other for "any consequential, incidental, indirect, or special damages, including lost profits and punitive damages." *Id.* § 11.12.

Plaintiffs commenced this action in New Jersey state court on April 26, 2012, filing a class action complaint ("Complaint") on behalf of themselves and "approximately 60 New Jersey bread distributors who drive out of two depots maintained by Defendant in Mt. Laurel and Pleasantville, New Jersey." Compl. ¶ 1. In its essence, the Complaint alleges that Defendants breached their obligations under the Distribution Agreement by refusing to allow Plaintiffs to buy and resell various types of bread products sold under the Arnold's, Freihofer's, and Thomas's brand names. *Id.* ¶ 4. Not only do these and related actions give rise to liability for breach of contract, the Complaint alleges, they also amount to violations of the NJFPA. *See id.* ¶¶ 73-93. Accordingly, Plaintiffs sought punitive damages, compensatory damages, and an injunction.

Defendant removed this action on June 1, 2012 based on the Court's diversity jurisdiction. (Doc. No. 1). It filed the instant motion on June 8, 2012 (Doc. No. 5) to dismiss certain counts of Plaintiffs' Complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

## II. DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)

3

(quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis.  *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  *Id.* (quoting *Iqbal*, 556 U.S. at 675).  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680).  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  *Id.* (quoting *Iqbal*, 556 U.S. at 680).  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  *Id.*

## III.   DISCUSSION & ANALYSIS

Defendant's motion to dismiss presents two issues for the Court's consideration.[3]  First, Defendant argues that Plaintiffs' NJFPA claim must be dismissed because the Act does not apply to the parties' Distribution Agreement.  Second, Defendant asserts that Plaintiffs are barred from seeking so-called "lost profit" damages on any of their claims because the Distribution

---

[3] Defendant's motion also seeks dismissal of Count One of Plaintiffs' Complaint.  Def.'s Br. in Support of Mot. to Dismiss 6.  Count One is a prayer for injunctive relief, which Defendant rightly points out is not by itself a substantive cause of action but rather a remedy that may accompany such a cause of action.  Plaintiffs respond that they included Count One to conform to New Jersey state court pleading practices, but acknowledge that this count is no longer necessary now that the action has been removed to the federal forum.  *See* Pl.'s Opp. Br. 10.  Thus, the Court will grant Defendant's motion to dismiss Count One.  While their request for injunctive relief will not proceed as a separate count in their Complaint, however, Plaintiffs retain the right to seek such equitable remedies as part of their breach of contract and NJFPA claims.

Agreement specifies that they have waived their right to such relief.[4]  The Court will consider each issue in turn.

### A.      New Jersey Franchise Practices Act Claim

Enacted in 1971, the NJFPA was aimed at curbing the tendency of franchisors to profit unduly from their superior economic and bargaining positions when negotiating agreements with potential franchisees.  *Goldwell of New Jersey, Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 184 (D.N.J. 2009) (citing *Westfield Centre Serv., Inc. v. Cities Serv. Oil Co.*, 432 A.2d 48, 52-53 (N.J. 1981)); *see also Goldsworthy v. Browndorf*, No. L-2177-04, 2011 WL 3687401 at *3 (N.J. App. Aug. 24, 2011) (explaining that the NJPFA "reflects the legislative concern over long-standing abuses in the franchise relationship, caused by the power disparity between franchisors and franchisees") (citation and internal quotations omitted).  To remedy this problem, the Act, among other things, creates "an exception to the general rule that two businesses are free to terminate their business relationship according to the terms of their contract."  *New Jersey American, Inc. v. Allied Corp*, 875 F.2d 58, 61 (3d Cir. 1989).  Excepting two limited circumstances, a franchisor may not terminate, cancel, or fail to renew a franchise subject to the NJFPA unless it provides advanced written notice of such action and it does so for "good cause."  N.J.S.A. § 56:10-5.

Given the NJFPA's regulatory reach into these traditionally private business affairs, the scope of the Act is necessarily limited.  Accordingly, a party seeking relief under the NJFPA must demonstrate that the business relationship into which it has entered meets the Act's threshold requirements.  *See* N.J.S.A. § 56:10-4.  Specifically, in addition to two other

---

[4] Defendant also asks the Court to strike Plaintiffs' request for treble damages arising out of their breach of contract and NJFPA claims.  Def.'s Br. in Support of Mot. to Dismiss 12-13.  Plaintiffs concede that neither of these claims allows for recovery of treble damages.  Pl.'s Opp. Br. 3 n.1.  Thus, the Court will grant Defendant's motion to strike this demand.

5

requirements not currently in dispute, the NJFPA applies to a franchise only if "the performance of [that franchise] contemplates or requires the franchisee to establish or maintain a place of business within the state of New Jersey." N.J.S.A. § 56:10-4(a)(1).

Defendant interprets this language as imposing two distinct pleading requirements on Plaintiffs, and argues that they have failed to satisfy either of them. First, Defendant asserts that Plaintiffs have failed to plead properly that they actually maintain a "place of business" in New Jersey as that term is defined under the NJFPA.[5] Second, Defendant maintains that Plaintiffs have failed to show how performance of their franchise with Defendant "contemplate[d] or require[d]" them to maintain these places of business.

*i.     Whether Plaintiffs actually maintain places of business in New Jersey*

Plaintiffs allege that "[t]he performance of the contractual duties of Plaintiffs . . . require [them] . . . to maintain fixed places of business in New Jersey . . . and Plaintiffs . . . do, in fact, maintain such fixed places of business." Compl. ¶ 84. Defendants argue vigorously that such allegations do not satisfy Plaintiffs' pleading obligations under *Iqbal* and *Twombly*, characterizing paragraph 84 of the Complaint simply as "a legal conclusion couched as factual allegations" that the Court need not credit. Def.'s Br. in Support of Mot. to Dismiss 10 (citing *Iqbal*, 556 U.S. at 678).

The Court disagrees with Defendant's characterization. Plaintiffs allege in no uncertain terms that they maintain places of business in the state of New Jersey where they sell

---

[5] The Court notes that Plaintiffs do not dispute Defendant's contention that section 56:10-4(a)(1) requires them to allege that they actually maintain places of business in New Jersey. While the Court's analysis proceeds accordingly, it is not convinced that Defendant has read the statute correctly. Nowhere in the NJFPA does it say that the Act applies only if a franchisee actually maintains a place of business in New Jersey. Instead, the Act applies to franchises, "the performance of which *contemplates* or requires the franchisee" to establish or maintain such places. N.J.S.A. § 56:10-4(a)(1) (emphasis added). The Legislature's inclusion of the "or contemplates" language would seem clearly to indicate that maintaining a place of business in New Jersey is not absolutely required in order to trigger the NJFPA's protections. Rather, the Act could conceivably apply to arrangements in which the parties simply anticipate that the franchisee will set up a bricks and mortar location in New Jersey (thus signaling that they "contemplated" this course of action), even if such plans never coming to fruition.

Defendant's bread and roll products. Compl. ¶ 84. This allegation is no conclusory statement; rather, it involves a simple fact that either does or does not exist in the world. As the Court is required to accept such factual allegations as true for purposes of deciding a motion to dismiss, it is satisfied that Plaintiffs have met their pleading burden.[6]

> ii. *Whether performance of the franchise "contemplates or requires" that Plaintiffs establish or maintain places of business in New Jersey*

The second pleading requirement Plaintiffs must establish is whether performance of the franchise either contemplated or required that Plaintiffs would establish places of business in New Jersey. *See* N.J.S.A. § 56:10-4(a)(1). If the franchise arrangement "requires" a franchisee to establish a place of business, the source of such obligation will generally be found in the parties' written agreement. *See Instructional Systems, Inc. v. Computer Curriculum Corp.*, 614 A.2d 124, 136 (N.J. 1992) (describing the inquiry as "whether *the contract* required a place of business in New Jersey") (emphasis added); *see also Finlay & Associates, Inc. v. Borg-Warner Corp.*, 369 A.2d 541, 545 (N.J. Super. 1976) (looking to the "written distributorship agreement" for the "requirement" that franchisee must maintain a fixed place of business within New Jersey).

In this case, Plaintiffs allege that performance of their contractual duties "require [sic] [them] . . . to maintain fixed places of business in New Jersey." Compl. ¶ 84. This statement is a conclusion that the Court need not take as true. *See Iqbal*, 556 U.S. at 680. Plaintiffs allege no

---

[6] Defendant further argues that this allegation is "directly contradict[ed]" by other paragraphs in Plaintiffs' Complaint such that the Court should dismiss the NJFPA claim with prejudice. Specifically, Defendants emphasize how the Complaint describes a franchise business model in which Plaintiffs pick up bread products at Defendant's warehouses, load them on to their trucks, and then drive them directly to retail customers at their retail locations. *See* Compl. ¶¶ 1, 3, 16, 23, 26, 32. Certainly, this delivery scheme does not absolutely require Plaintiffs to maintain places of business in order to deliver bread products to their customers. But neither are the two concepts antagonistic to one another. That is, nothing in the agreement would prevent Plaintiffs from purchasing certain quantities of bread from Defendant, holding such bread at a fixed place of business such as a warehouse that they maintain, and then delivering such bread from that warehouse to retail customers at various locations. Thus, the Court will not dismiss Plaintiffs' NJFPA claim with prejudice on this basis.

facts that would explain *why* performance of their contractual duties required them to maintain such places of business. Further, nowhere in the Distribution Agreement do Plaintiffs covenant to establish or maintain their own places of business in New Jersey. Thus, without any factual allegations to support their conclusory statements, Plaintiffs have not adequately alleged that performance of their contractual duties under the Distribution Agreement required them to establish or maintain a place of business in the state of New Jersey.

However, Plaintiffs may still carry their pleading burden if they can show that performance of their franchise "contemplated" that they would maintain or establish places of business in New Jersey. Such a circumstance is "contemplated" for purposes of the NJFPA if the parties "reasonably anticipated that the franchisee would establish a New Jersey place of business." *Instructional Systems*, 614 A.2d at 136; *see also Cassidy Podell Lynch, Inc. v. SnyderGeneral Corp.*, 944 F.2d 1131, 1145 (3d Cir. 1991) (construing the term "contemplates" in the NJFPA context to mean "consideration of a fixed business location for the sale of franchisor's products"). Showing that it is merely possible (that is, not inconsistent with the franchise arrangement) for a franchisee to establish a place of business in the state is not enough. *See Cassidy Podell Lynch, Inc.*, 944 F.2d at 1145. Rather, there must be sufficient evidence to indicate that the parties "had in mind the type of business facility the statute defines." *Id.*

Although Plaintiffs claim that performance of their duties under the Distribution Agreement "contemplate [sic] [that they would] . . . maintain fixed places of business in New Jersey," Compl. ¶ 84, this statement is a conclusory allegations that the Court will disregard. *See Iqbal*, 556 U.S. at 680. On the other hand, a careful review of the Distribution Agreement lends some factual support for Plaintiffs' position. Section 7.2 of the Distribution Agreement, called "Change in Delivery Method," states, in pertinent part, "[i]n the event any Outlet makes an

independent determination to accept delivery of the Products by any method other than store door delivery, . . . [Plaintiffs] shall have the first right to effect such alternative service." Thus, the Distribution Agreement specifically anticipates a situation in which Plaintiffs provide bread products without actually going to their customers' (referred to here as "Outlets") particular locations. If Plaintiffs are not going to their customers' stores, then presumably the customers would be coming to pick up their bread at some fixed place of business belonging either to Plaintiffs or some third party. Regardless of what transpired in practice, the Court finds that the inclusion of section 7.2 in the Distribution Agreement is just enough to show that the parties at least "had in mind" that Plaintiffs would establish or maintain places of business to exercise their rights under the franchise arrangement.[7] *See Cassidy Podell Lynch*, 944 F.2d at 1145.

Thus, the Court concludes that Plaintiffs have alleged facts sufficient to show that the NJFPA applies to their franchise with Defendant. Accordingly, Defendant's motion to dismiss Count Three of Plaintiff's Complaint will be denied.

## B. Plaintiffs' Requested Relief

Plaintiffs' Complaint seeks recovery for damages sustained as a result of Defendant's alleged breach of the parties' Distribution Agreement. These damages include, inter alia, the "loss of benefit of the bargain, lost profits, and loss of their investment in purchasing their distribution route." Compl. ¶ 72. Defendant asserts that Plaintiffs are barred under the terms of

---

[7] In reaching this decision, the Court takes note of the fact that in 2009, the New Jersey Legislature amended the NJFPA to broaden significantly the definition of "place of business." 2009 N.J. Sess. Law Serv. Ch. 235 (Assembly 2491) (West). Accompanying this amended definition was a finding by the Legislature the Act's "protections [were] necessary to protect not only retail businesses, *but also wholesale distribution franchisees* that, through their efforts, enhance the reputation and goodwill of franchisors in [New Jersey]." N.J.S.A. § 56:10-2 (emphasis added). In addition, the Legislature declared that "the courts have in some cases more narrowly construed the Franchise Practices Act than was intended." *Id.* The Court reads the amendment and the accompanying findings as evincing a clear legislative intent to have the NJFPA apply to distribution franchise agreements, assuming the Act's threshold requirements are satisfied based on the particular circumstances of each case.

the Distribution Agreement from seeking lost profit damages. It therefore asks the Court to strike this demand.

Section 11.12 of the Distribution Agreement states:

> **DAMAGES:** Notwithstanding anything to the contrary contained in this Agreement, in no event shall either party be liable to the other for any consequential, incidental, indirect or special damages, including lost profits and punitive damages.

Plaintiffs do not dispute the force of this provision. Instead, they claim that the "lost profits" they seek are a form of *direct* damages, rather than the "consequential, incidental, indirect or special damages" covered by section 11.12. For this proposition, they cite numerous cases, mostly involving services and licensing contracts, in which courts have indeed distinguished between direct lost profit damages and consequential lost profit damages. Pl.'s Opp. Br. 2-9 (*citing Litton Indus., Inc. v. IMO Indus., Inc.*, No. L-1730-97, 2008 WL 215541 at *21 (N.J. App. Div. Jan 28, 2008); *Atlantic City Assocs., LLC v. Carter & Burgess Consultants, Inc.*, 453 Fed. App'x 174, 179-80 (3d Cir. 2011); *Penncro Assocs., Inc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151 (10th Cir. 2007); *In re First Magnus Financial Corp.*, No. 10-1006, 2010 WL 6452904 at *5 (9th Cir. Aug. 31, 2010); *Peter Kiewit Sons' Inc. v. ATSER, LP*, No. 08-541, 2010 WL 1417811 at *3 (D. Neb. Apr. 1, 2010); *Coremetrics, Inc. v. Atomic Park.com, LLC*, No. 04-0222, 2005 WL 3310093 at *1 (N.D. Cal. Dec. 7, 2005); *Claredi Corp. v. SeeBeyond Tech. Corp.*, No. 04-1304, 2010 WL 1257946 at **5-6 (E.D. Mo. Mar. 26, 2010); *Optimal Interiors, LLC v. HON Co.*, 774 F. Supp. 2d 993, 1010 (S.D. Iowa 2011)).

Defendant responds that this distinction is not applicable in the present context. First, because the Distribution Agreement relates to transactions in goods, Defendant argues that it is governed by New Jersey's version of the Uniform Commercial Code ("U.C.C."), N.J.S.A. 12A:1-101 *et seq*. Thus, Plaintiffs' recovery must accord with the remedial scheme for buyers

laid out in subchapter 7 of the U.C.C., rather than any common law theories of recovery that may apply in the context of services contracts.  Second, given the nature of the parties' franchise, in which Plaintiffs obtained the rights to purchase Defendant's bread products and sell them to third parties within a designated sales area, the only lost profits Plaintiffs could possibly seek are inherently consequential in nature and thus unavailable pursuant section 11.12.  *See* Def.'s Reply Br. 11-12.

As an initial matter, the Court agrees with Defendant that the New Jersey U.C.C. applies to contracts for the distribution of goods.  *See Custom Commc'ns Eng'g, Inc. v. E.F. Johnson Co.*, 636 A.2d 80, 85 (N.J. App. Div. 1993) (finding that the UCC applied to an agreement to sell and service products within a designated territory in New Jersey and noting that a "distributorship is . . . generally governed by . . . the UCC because it involves a 'transaction in goods'"); *Jo-Ann, Inc. v. Alfrin Fragrances, Inc.*, 731 F. Supp. 149 (D.N.J. 1989) (recognizing that the New Jersey Supreme Court had not specifically ruled on the issue, considering sections of the New Jersey U.C.C. along with the accompanying study comments, and holding that the U.C.C. applied to an exclusive distributorship agreement involving beauty care products); *see also Spring Motors Distributors, Inc. v. Ford Motor Co.*, 489 A.2d 660, 668 (N.J. 1985) ("[T]he U.C.C. is the more appropriate vehicle for resolving commercial disputes arising out of business transactions between persons in a distributive chain.").

Under the U.C.C., if a seller contracts with a buyer for the sale of goods and fails to deliver them, the buyer's measure of direct damages is "the difference between the market price at the time when the buyer learned of the breach and the contract price . . . less expenses saved in consequence of the seller's breach."  N.J.S.A. § 12A:2-713.  In addition to these direct damages, the buyer may also recover "any incidental and consequential damages provided" under the

11

U.C.C. *Id.* Such damages include reasonably foreseeable lost profit damages. *See* N.J.S.A. § 12A:2-715(2)(a). Thus, in the U.C.C. context, lost profit damages appear to fall within the exclusive province of consequential, rather than direct, damages. *See Cassidy*, 944 F.2d at 1147 (describing as a subset of consequential damages a distributor's lost profits arising out of a manufacturer's breach of an installment sales contract).

In this case, Plaintiffs leave it to the Court to speculate about exactly what lost profit damages they seek: their opposition brief speaks in generalities, referring only to "those lost profits which the law would categorize as direct damages; those which flow directly from Defendant's breach of the form contract and which caused Plaintiffs to lose the anticipated benefit of their bargain with Defendant." Pl.'s Opp. Br. 3. However, to the extent Plaintiffs seek recovery of profits which they planned to make (but for Defendant's alleged breach) on the sale of individual Arnold's, Freihofer's, and Thomas's breads and roll products to retail clients within their distribution territory, the Court holds that such recovery is barred under section 11.12 of the parties' Distribution Agreement.[8] Thus, the Court will grant Defendant's motion to strike the request for these damages.

## IV. CONCLUSION

For the reasons stated above, the Court will grant in part and deny in part Defendant's motion to dismiss Plaintiffs' Complaint. Count One of the Complaint for an injunction will be dismissed, although Plaintiffs will retain the right to seek such relief as part of their NJFPA or common law breach of contract claims. Defendant's motion to dismiss Plaintiffs' NJFPA claim will be denied. The Court will strike Plaintiffs' request for any treble damages, as well as their request for lost profit damages to the extent that those lost profits refer to those Plaintiffs planned

---

[8] The U.C.C. expressly states that parties to a contract for the sale of goods may waive their rights to recover such damages, so long as the waiver is not unconscionable. *See* N.J.S.A. § 12A:2-719(3).

to earn by selling goods purchased from Defendant to third party retailers.  An appropriate order shall issue today.


Dated:    3/12/2013                                                                    /s/ Robert B. Kugler               
                                                      ROBERT B. KUGLER
                                                     United States District Judge